IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02923-PAB

WILLIE BRAXTON,

      Petitioner,

v.

TRAVIS TRANI and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

---

      This matter is before the Court on Petitioner Willie Braxton's *pro se* amended
Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 5]
("the Petition").  Respondents have filed Respondents' Answer Brief [Docket No. 24]
("the Answer") and Petitioner has filed Applicant's Reply Brief [Docket No. 25] ("the
Traverse").  After reviewing the record, including the Petition, the Answer, the Traverse,
and the state court record, the Court concludes that the Petition should be denied and
the case dismissed with prejudice.

## I.  BACKGROUND

      Mr. Braxton is challenging the validity of his conviction in the District Court for the
City and County of Denver, Colorado, case number 03CR2619.  The charges against
Mr. Braxton stemmed from an aggravated robbery on April 24, 2003, committed by a
group of individuals that included Mr. Braxton.  Mr. Braxton entered a guilty plea to one
count of aggravated robbery in exchange for the dismissal of eighteen other charges

and a stipulated sentence of twenty-four years in prison.  Mr. Braxton's plea agreement

also provided that he would testify at the trials of his codefendants.  At sentencing, Mr.

Braxton sought to withdraw his guilty plea because he had not testified against his

codefendants and the plea was not voluntary.  The trial court denied Mr. Braxton's

motion to withdraw his guilty plea and imposed the stipulated sentence.  On appeal, the

Colorado Court of Appeals affirmed the trial court in part, reversed in part, and

remanded with directions to resolve Mr. Braxton's request to withdraw his guilty plea on

the grounds that the plea was involuntary.  *See People v. Braxton*, No. 04CA0891

(Colo. App. Aug. 25, 2005) (unpublished) [Docket No. 10-11].

Following a hearing on remand in July 2006, the trial court determined Mr.

Braxton had entered his guilty plea voluntarily and denied his motion to withdraw the

guilty plea.  That order was affirmed on appeal.  *See People v. Braxton*, No. 06CA1748

(Colo. App. Jan. 24, 2008) (unpublished) [Docket No. 10-8].  On May 19, 2008, the

Colorado Supreme Court denied Mr. Braxton's petition for writ of certiorari.  *See* Docket

No. 10-6.

On April 1, 2009, Mr. Braxton filed in the trial court a postconviction motion

pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  The trial court

denied the Rule 35(c) motion, and the trial court's order denying postconviction relief

was affirmed on appeal.  *See People v. Braxton*, No. 09CA1968 (Colo. App. Feb. 24,

2011) (unpublished) [Docket No. 10-2].  Mr. Braxton did not file a petition for writ of

certiorari in the Colorado Supreme Court in the state court postconviction proceedings.

However, on September 19, 2011, he filed in the Colorado Supreme Court a document

titled "Discretion[ar]y Review" in which he asked the Colorado Supreme Court to review

2

the trial court's order denying his Rule 35(c) motion as well as the mandate issued by

the Colorado Court of Appeals in the postconviction Rule 35(c) proceedings.  *See*

Docket No. 13-1.  On October 4, 2011, the Colorado Supreme Court denied the request

for "Discretion[ar]y Review."  *See* Docket No. 13-2.

      Mr. Braxton asserts two claims for relief in the Petition.  He first claims that the

trial court erred in denying his motion to withdraw his guilty plea because the terms of

the plea agreement were violated and he did not understand the trial court's

advisement regarding his right to a jury trial.  The Court construes the Petition and Mr.

Braxton's first claim liberally as a due process claim challenging the validity of his guilty

plea.

      Mr. Braxton's second claim is an ineffective assistance of counsel claim.

Construing the Petition liberally, the Court finds that Mr. Braxton is claiming plea

counsel provided ineffective assistance when plea counsel: (a) created a conflict of

interest by failing to file and pursue a motion to withdraw the guilty plea; (b) coerced Mr.

Braxton into accepting an involuntary plea agreement by telling him the alternative was

a life sentence; and (c) failed to advise him adequately regarding the terms of the plea

agreement and the elements of aggravated robbery.

      The Court previously entered an Order to Dismiss in Part [Docket No. 18] in

which claims 2(b) and 2(c) were dismissed as unexhausted and procedurally barred.

As a result, only claim 1 and claim 2(a) remain pending before the Court.  Respondents

concede that these claims are timely and exhausted.

3

## II.  STANDARD OF REVIEW

The Court must construe the Petition and other papers filed by Mr. Braxton

liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S.

519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the

Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

A writ of habeas corpus may not be issued with respect to any claim that was

adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  Mr. Braxton bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*,

131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's

decision resulted from an unreasonable legal or factual conclusion does not require that

there be an opinion from the state court explaining the state court's reasoning."  *Id*. at

784.  Thus, "[w]hen a federal claim has been presented to a state court and the state

court has denied relief, it may be presumed that the state court adjudicated the claim on

the merits in the absence of any indication or state-law procedural principles to the

contrary."  *Id*. at 784-85.  Even "[w]here a state court's decision is unaccompanied by

4

an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 784.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims."  *Id*.

The Court review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Braxton seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases
> where the facts are at least closely-related or similar to the case *sub
> judice*.  Although the legal rule at issue need not have had its genesis in
> the closely-related or similar factual context, the Supreme Court must
> have expressly extended the legal rule to that context.

5

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at

1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of

that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id*. at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather that application must also be unreasonable."  *Id*. at 411.  "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).

7

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III.  MERITS OF PETITIONER'S CLAIMS

### A.  Claim 1

As discussed above, the Court construes the Petition and Mr. Braxton's first claim liberally as a due process claim challenging the validity of his guilty plea.  Mr. Braxton contends that his plea violates due process because counsel coerced him into pleading guilty, he did not understand the essential elements of the offense to which he pleaded guilty, and he did not understand the consequences of his guilty plea because he believed he would be allowed to withdraw the guilty plea if he chose not to testify against his co-defendants.  In his Traverse, Mr. Braxton provides the following explanation of his first claim and his testimony in state court in support of that claim:

At the remand hearing, Mr. Braxton testified that he had always wanted to go to trial and had appeared on January 9, 2004, expecting to litigate motions, not to contemplate a guilty plea.  For a variety of reasons, Mr. Braxton felt that his will was overcome by plea counsel's conduct which resulted in his guilty plea being involuntary.  For example, at the time of the providency hearing, Mr. Braxton said he was suffering from depression.  While he had been taking Prozac prior to that point, Mr. Braxton stopped taking the medication some 30 days before the hearing.  Mr. Braxton stated that plea counsel coerced him into accepting the proposed disposition by telling him that if he did not accept the plea he would receive a life sentence and would never see his family again.  After being presented with the plea offer, Mr. Braxton requested time to discuss the offer with his family but plea counsel said no, you just accept the deal today.

Although Mr. Braxton had completed school through the eleventh grade, he testified that he had been in special education classes since the fifth grade.  Mr. Braxton stated that he had a learning disability, but did not know the name of his particular disability and described it as slow learning.  Mr. Braxton testified that plea counsel did not adequately go over the written plea agreement and Rule 11 advisement with him, but only told him where to sign them.  Mr. Braxton did not read all of the paperwork because he was still deciding whether to accept the deal in the first place.

Significantly, there were portions of the agreement that Mr. Braxton did not understand.  Specifically, Mr. Braxton did not understand the element of aggravated robbery which pertained to presence of an armed confederate.  Mr. Braxton asked plea counsel to explain it to him, but because they were already at the podium, plea counsel advised him simply to stand up and answer yes to [the] judge's questions.  Finally, plea counsel told Mr. Braxton that he had to testify against his co-defendants in order to get the deal, otherwise the plea would be withdrawn.  Mr. Braxton took this to mean that he could withdraw his plea if he did not testify against his co-defendants.

[Docket No. 25 at 6-7 (citations to the record omitted).]

The United States Court of Appeals for the Tenth Circuit has outlined the clearly

established federal law that applies in reviewing the validity of a state court guilty plea in

the habeas context.  In order to withstand constitutional scrutiny,

> [a] criminal defendant's state court guilty plea must comport with due process. *Miles v. Dorsey*, 61 F.3d 1459, 1465-66 (10th Cir. 1995). Thus, the defendant must be competent to enter the plea and the plea must be knowing and voluntary. *Allen v. Mullin*, 368 F.3d 1220, 1238-39 (10th Cir. 2004) (discussing competency); *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996) (discussing the knowing and voluntary requirement).
>
> In order to be competent to enter a guilty plea, a defendant must be able to consult with his attorney with a reasonable degree of rational understanding and must have "a rational as well as factual understanding of the proceedings against him." *Allen*, 368 F.3d at 1239 (internal quotation marks omitted). A plea is "knowing" if the defendant has "a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 23 L. Ed.2d 274 (1969). In order to be "voluntary," a plea must be "the product of a deliberate, intelligent choice." *Cunningham*, 92 F.3d at 1060.

*Gonzales v. Tafoya*, 515 F.3d 1097, 1118 (10th Cir. 2008).

As noted above, the trial court held a hearing in July 2006 on Mr. Braxton's motion to withdraw his guilty plea following the remand from the Colorado Court of Appeals. The trial court did not specifically address the federal constitutional standards applicable to a guilty plea because Mr. Braxton sought to withdraw his guilty plea pursuant to Rule 32(d) of the Colorado Rules of Criminal Procedure. Under Rule 32(d), a defendant's motion to withdraw his guilty plea prior to sentencing may be granted when the defendant establishes "a fair and just reason" for the withdrawal. *People v. Chippewa*, 751 P.2d 607, 609 (Colo. 1988). After hearing testimony from Mr. Braxton and plea counsel as well as the arguments of counsel, the trial court determined that there was no fair and just reason to allow Mr. Braxton to withdraw his guilty plea and denied the motion in an oral ruling. The trial court made factual findings relevant to Mr. Braxton's first claim in this action and explained its ruling as follows:

The background of this case is this, I got Mr. Braxton, who previous to his plea in this case had entered pleas on – been involved in the criminal justice system in his adult life at least four times, twice in 2000, which was about four years before he took the plea in this particular case.

Furthermore, the Defendant, who was looking at a life sentence not just for one charge but for two specific charges out of the 18 counts that he faced, both of which were Class 1 felonies.

I also have a Defendant who not only is said to have confessed in Exhibit 1, but there is an audiotape of it.  It's against this background I have to look at this case and make a decision as to whether there is a fair and just reason.  But in my view it goes beyond the fair and just reason.

The Court of Appeals made it clear, the case law makes it clear that it has to be something that the Defendant establishes that the denial of his request to withdraw the plea will subvert justice.  Specifically, the Court of Appeals gives us three possibilities.  Actually the Supreme Court does this in People v. Chavez, 730 P.2d 321, a 1986 Supreme Court decision.  Either the Defendant was influenced to enter a guilty plea even though they had a defense, that the plea was entered into [due to] fear, fraud or official misrepresentation or that it was involuntary.

Now, it seems that the Defendant is going on every single possible ground that he can.  He hasn't really chosen one particular ground to go with it.  That's fine.  That's up to him.  But I want to look at all three grounds on that basis.

Now, the first one is that he entered a plea even though he had a defense.  Now, it's clear that the record was clear from [plea counsel] that the Defendant told him that he really did want to go to trial.  But this requires more than just the desire to go to trial.  It requires the ability to have a defense and actually potentially win at trial.

In the face of an audiotaped confession and in the face of Exhibit 1, I have to tell you that I'm concluding that he has not met his burden of proving that particular reason to withdraw this plea because he didn't have a defense.

I credit [plea counsel's] expert opinion in this case that there was an extremely high likelihood of conviction.  We have 18 charges here, two of which carry mandatory life in prison without the possibility of parole.  So that particular way of proving fair and just reason is not made in this case by the Defendant.

Then I look at was it as a result of fear, fraud or official misrepresentation.  There is no indication whatsoever in the rule 11 advisement that any of these are present.  There is nothing specified even in Mr. Braxton's pro se motions that he filed in this particular case to indicate there was fear, fraud or misrepresentation involved in his decision to take this plea.

Now that kind of bleeds over into whether or not this is a voluntary plea.  So I'm going to address this all in one ruling.

The question is was this a voluntary plea.  Now, on page 6 of the Court of Appeals['] not-reported decision talks about the fact that the Defendant was concerned that the stipulated sentence was too long.  The Court of Appeals noted that is just not good enough reason because that's buyer's remorse.

I am concluding essentially that this is what this motion to withdraw the plea is, is buyer's remorse.  It's not a question of being involuntary or not.  There is really no authority to indicate to me that Mr. Braxton made this decision on anything other than a reasonable decision at the time to avoid life in prison.

He understood enough about the situation, enough about the case, and enough about his rights to prepare and file his own motions to withdraw the plea.  So the fact that he had some very vague, nonspecified learning disabilities that he testified about today, I just don't find that credible.  I think that on the basis of this record, Mr. Braxton did understand his choices.  He did understand the choice he was making. He just ultimately made a decision that he made the wrong choice.  That's what we are talking about here.

Also, I believe [plea counsel] when he tells us how he discussed this case, how he negotiated the offer, and how he conveyed it to Mr. Braxton along with the information.

Quite frankly, Mr. Braxton, I do not believe you when you tell me that [plea counsel] didn't meet with you, didn't spend any time with you.  I don't believe it.  The evidence is done.  I'm making a credibility decision here, that's why I'm looking you in the eye.  I don't believe you.  I believe [plea counsel].  I believe he did in fact go through and make certain you understood the practical consequences of any decision you made and the decision was yours and yours alone to make.

There were two safeguards in this case to make sure that you were making a voluntary decision.  Not only did [plea counsel] have to make an

opinion based on what he knew about you that you were making this decision on your own, Judge Hyatt had to make that decision.  Judge Hyatt is a very careful judge.  He's a very experienced judge.  And he has allowed people to either withdraw pleas or not gone through with pleas if he feels it's not voluntary.

[Plea counsel's] testimony confirms what I've known about [plea counsel] already from his participation in cases in front of me, that he is also careful about safeguarding against involuntary pleas in this particular case.

The final issue I have to bring up is this issue relating to depression.  I have nothing but the vaguest indication that depression had anything to do with this decision.  The barest record I have is that Mr. Braxton was on Prozac, he went off of it for a period of time.  I have nothing else to support the idea that it was based on that direction that he was making this decision.  Again we have those two safeguards.  We have [plea counsel] and we have Judge Hyatt to sit there and make certain that was a voluntary plea.

Back to the fact of the matter, whether in this case whether [plea counsel] was willing to say it or not, there was a very high likelihood of conviction which would have carried a mandatory life sentence.  I have said I don't really understand the whole issue about how if Mr. Braxton would have understood that he acted as a confederate that would have gone to his benefit.  He understood better that he could be liable for all of these crimes simply by his complicity, that would make it even more likely that he would have a life-time sentence.  I don't see how that inures to his benefit.  It's not logical to me.

Furthermore, when Mr. Braxton argues to me he felt there was a promise on the record that allowed him to negate this plea and say, King's X, I don't want to do the plea because I don't feel like testifying against my codefendants.  This makes absolutely no logical sense to me at all.  It's inherently inconsistent.

For a defendant to be able to have veto power over a plea agreement simply by deciding he's not going to testify, completely negates the basis of the plea agreement.  It makes no sense to me.  The Court of Appeals has already dealt with this issue once.  I'm going to deal with it again.  That is not a basis, in my view.  In fact, Mr. Braxton caught a break.

The district attorney is the one that had veto power here.  The district attorney could have insisted the guilty plea stay and removed the

13

sentence concession.  For whatever reason, the DA decided not to do that.  That inured to Mr. Braxton's benefit.

So for all of the above-stated reasons, but primarily based on my feelings of credibility on the issue of voluntariness, I am denying the motion to withdraw the plea.

[State Court R., Tr. 7/10/06 at 102-08.]

On appeal following the trial court's denial of his motion to withdraw his guilty plea, Mr. Braxton specifically argued that his plea was involuntary and he cited *Boykin* and the United States Constitution in his opening brief to the Colorado Court of Appeals.  *See* Docket No. 10-10 at 14.  The Colorado Court of Appeals affirmed the trial court's ruling because, although the trial court heard conflicting testimony from Mr. Braxton and plea counsel, the trial court's factual findings were supported by evidence presented at the hearing.

The [trial] court found, as a matter of fact, that Braxton had entered his plea voluntarily.  This finding is amply supported by the testimony of Braxton's former attorney, who stated that Braxton (1) was told that it was his decision whether to plead guilty, (2) was informed of the terms and conditions of the agreement, and (3) did not appear to be suffering from depression.

[Docket No. 10-8 at 3-4.]

The Court notes initially that the trial court's determination that Mr. Braxton failed to present a fair and just reason for withdrawing his guilty plea under Rule 32(d) of the Colorado Rules of Criminal Procedure is not before the Court.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").  Instead, the Court must decide

14

whether the decision of the Colorado Court of Appeals rejecting Mr. Braxton's constitutional claim is contrary to or an unreasonable application of clearly established federal law.  However, the trial court's factual findings in support of its ruling denying the Rule 32(d) motion are relevant to Mr. Braxton's claim challenging the validity of his guilty plea.  As noted above, the Court must presume those factual findings are correct, and Mr. Braxton bears the burden of rebutting the presumption of correctness with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Mr. Braxton does not present any clear and convincing evidence that rebuts the presumption of correctness in the instant action.

The Court finds that Mr. Braxton's assertion that plea counsel coerced him to plead guilty is not supported by the record.  First, the trial court determined as a factual matter that Mr. Braxton was advised and knew the decision to plead guilty was his decision.  This factual finding is both presumptively correct and supported by the state court record.  In particular, at the time he entered his guilty plea on January 9, 2004, Mr. Braxton specifically agreed that no one was forcing him to plead guilty.  [State Court R., Tr. 1/9/04 at 29.]  This admission is important because "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  If Mr. Braxton was being coerced by counsel, as he now contends, he had an opportunity to advise the trial court regarding the alleged coercion when he entered his guilty plea.  He should have advised the trial court of the alleged coercion at that time. He did not do so, however, and his vague and conclusory assertion now that he was coerced by plea counsel does not demonstrate his guilty plea was involuntary in violation of his constitutional rights.

15

The fact that plea counsel advised Mr. Braxton the alternative to a guilty plea was a life sentence, advice that the trial court agreed was an accurate assessment of the situation given the strength of the prosecution's case, also does not demonstrate unconstitutional coercion.  Plea counsel's advise that it was in Mr. Braxton's best interests to plead guilty is not sufficient, by itself, to demonstrate that his guilty plea was not voluntary.  *See Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995).

Mr. Braxton's allegations regarding a learning disability and his depression, which he apparently contends made him more susceptible to coercion by counsel, do not alter the Court's conclusion.  The Court is not persuaded that Mr. Braxton's vague and conclusory allegations about a learning disability and depression demonstrate his plea was unknowing or involuntary.  For one thing, "deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions," *id.*, and, by themselves, do not establish that a guilty plea violates due process.  More importantly, Mr. Braxton fails to overcome the presumption of correctness that attaches to the trial court's determination that his vague testimony regarding a learning disability was not credible.  With respect to his depression and the fact that he was not taking Prozac at the time he entered his plea, the record reveals that Mr. Braxton advised the trial court when he entered his guilty plea on January 9, 2004 that his mental condition had improved since he stopped taking Prozac and he agreed that he was not suffering from any mental or emotional problems that might interfere with his judgment or ability to understand the proceedings.  [State Court R., Tr. 1/9/04 at 5.]  For all of these reasons, the Court finds that Mr. Braxton's coercion argument lacks merit.

16

Mr. Braxton next argues that his plea violates due process because he did not understand the essential elements of the offense to which he pled guilty.  The Court finds that this argument is not supported by the record and the trial court's factual findings.  The record demonstrates that the court advised Mr. Braxton regarding the essential elements of the offense to which he pled guilty, including the element regarding the presence of an armed confederate about which he specifically now contends he was confused, and Mr. Braxton acknowledged in open court that he understood the advisement.  [State Court R., Tr. 1/9/04 at 20-25.]  The record also reflects that, with respect to the presence of an armed confederate element, Mr. Braxton agreed as part of the factual basis for his plea that he was part of a group of individuals that drew weapons and committed an aggravated robbery on April 24, 2003, as charged.  [State Court R., Tr. 1/9/04 at 27-28.]  Because the record demonstrates the court specifically advised Mr. Braxton regarding the presence of an armed confederate element, his argument in the Traverse that the trial court misapplied federal law when it failed to understand his argument with respect to that element does not demonstrate his guilty plea was unknowing or involuntary.

Finally, Mr. Braxton argues that his guilty plea violates due process because he did not understand the consequences of his guilty plea and he believed he would be allowed to withdraw the guilty plea if he chose not to testify against his co-defendants. It is true that Mr. Braxton's agreement to provide complete and truthful testimony at the trials of his codefendants was a condition precedent to his guilty plea.  However, the fact that Mr. Braxton later decided not to testify at the trials of his codefendants does not make his guilty plea involuntary at the time it was entered.  *See Bachner v. United*

17

*States*, 517 F.2d 589, 598 (7th Cir. 1975) (Stevens, J., concurring) ("On the issue of voluntariness, it is, of course, inappropriate to take into account subsequent events, such as the actual sentence imposed; necessarily, the plea is either voluntary or involuntary at the time the defendant makes his choice.").  To the extent Mr. Braxton is claiming his plea was unknowing based on his belief that he would be allowed to withdraw the guilty plea if he chose not to testify against his co-defendants, he fails to demonstrate the existence of any clearly established federal law to support such a claim.  As noted above, "clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." *House*, 527 F.3d at 1016.  With respect to the argument that his guilty plea was unknowing because he believed he would be able to withdraw the plea if he chose not to testify against his codefendants, Mr. Braxton fails to identify any Supreme Court holding finding a guilty plea unknowing under similar factual circumstances.

Finally, the Court rejects Mr. Braxton's argument in his Traverse that the state court's decision regarding the voluntariness of his guilty plea was contrary to clearly established federal law because the trial court focused on the determination of guilt, i.e., the strength of the prosecution's case, and not the issue of whether the guilty plea was knowing and voluntary.  *See* Docket No. 25 at 10.  As discussed above, the strength of the prosecution's case and the factual findings of the state courts in that regard are relevant to the issue of coercion.

The Court will not address Mr. Braxton's argument in his Traverse that using added counts as leverage for a guilty plea is an illegal inducement and unconstitutional

coercion, *see* Docket No. 25 at 16-18, because he did not raise this argument in the Petition and the argument was not exhausted in the state court proceedings.

For all of these reasons, the Court finds that Mr. Braxton is not entitled to relief on his first claim challenging the validity of his guilty plea.

### B.  Claim 2(a)

Mr. Braxton alleges in claim 2(a) that plea counsel provided ineffective assistance when plea counsel created a conflict of interest by failing to file and pursue a motion to withdraw the guilty plea.  Mr. Braxton explains this claim as follows in his Traverse:  "Mr. Braxton requested counsel to withdraw his plea.  Counsel petitioned the court through an oral motion versus a formal motion.  This was prejudicial against Mr. Braxton, because defense counsel supported the conviction and joined [the] prosecution in obtaining that conviction."  [Docket No. 25 at 18.]

It was clearly established when Mr. Braxton was convicted that a defendant has a Sixth Amendment right to the effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Ineffective assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.

To establish that counsel was ineffective, Mr. Braxton must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is Mr. Braxton's burden to overcome this

presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).  Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Under the prejudice prong, Mr. Braxton must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*; *see also Richter*, 131 S. Ct. at 792 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable.").  To show prejudice in the context of a guilty plea, Mr. Braxton must demonstrate a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty but would have insisted on going to trial.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In determining whether Mr. Braxton has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Braxton.  *See Boyd*, 179 F.3d at 914.

Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief.  *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).  If Mr. Braxton fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claims must be dismissed.  *See Strickland*, 466 U.S. at 697.

Finally, if Mr. Braxton can demonstrate that plea counsel "actively represented conflicting interests," he is not required to show prejudice under *Strickland*. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Id.* at 172 n.5.

The Colorado Court of Appeals determined that plea counsel did not create a conflict of interest by failing to file and pursue a motion to withdraw the guilty plea and, as a result, applied the general *Strickland* standards in addressing Mr. Braxton's ineffective assistance of counsel claim. According to the Colorado Court of Appeals, Mr. Braxton's allegation that plea counsel created a conflict of interest by failing to file and pursue a motion to withdraw his plea

> fails in light of the existing record. During the remand hearing, Braxton's lawyer testified that he did not pursue the motion to withdraw because he thought that Braxton had changed his mind after being reminded of the likely result of a trial. The court found counsel credible generally. And the court's ruling on the merits of the motion for withdrawal precludes any finding that counsel labored under an "actual conflict of interest that adversely affected counsel's performance." *People v. Miera*, 183 P.3d 672, 675 (Colo. App. 2008) (stating the elements of an ineffective assistance claim that rests on an alleged conflict of interest).

[Docket No. 10-2 at 8.]

The determination of the Colorado Court of Appeals that plea counsel did not create a conflict of interest by failing to file and pursue a motion to withdraw Mr. Braxton's guilty plea is neither contrary to nor an unreasonable application of clearly established federal law. The Court notes initially that there is no clearly established federal law that would eliminate the requirement of demonstrating prejudice under *Strickland* on the facts of this case. *See Mickens*, 535 U.S. at 176 (noting that it is an

open question whether the exception to *Strickland* for cases of actual conflicts of interest extends to conflicts of interest that do not involve multiple or concurrent representation by counsel).  Thus, the ineffective assistance of counsel standards set forth in *Strickland* apply to claim 2(a) and Mr. Braxton is not entitled to relief unless he shows both deficient performance and prejudice.

The Colorado Court of Appeals determined Mr. Braxton failed to demonstrate deficient performance because plea counsel testified that he believed Mr. Braxton had changed his mind about seeking to withdraw his guilty plea.  Although Mr. Braxton obviously disagrees with plea counsel's testimony, the trial court made a factual determination that plea counsel's testimony was credible and that Mr. Braxton's testimony was not credible.  Because Mr. Braxton fails to present clear and convincing evidence to the contrary, the Court presumes this factual determination is correct.  *See* 28 U.S.C. § 2254(e)(1).  In light of this factual determination that plea counsel believed Mr. Braxton had changed his mind about withdrawing his guilty plea, the Court cannot conclude that plea counsel's failure to file a written motion to withdraw Mr. Braxton's guilty plea prior to sentencing constitutes deficient performance.

In any event, even if plea counsel's performance somehow could be deemed deficient, the Court also concludes that Mr. Braxton cannot demonstrate any prejudice from plea counsel's failure to file a written motion to withdraw Mr. Braxton's guilty plea. The Court reaches this conclusion based on the fact that new counsel actually filed and argued a written motion to withdraw Mr. Braxton's guilty plea on remand from the Colorado Court of Appeals in 2006.  Although that motion was filed after sentencing, the trial court construed the motion as asserted pursuant to Rule 32(d) of the Colorado

22

Rules of Criminal Procedure and applied the applicable standards under Rule 32(d).

Mr. Braxton does not argue, and there is no indication in the state court record, that the

motion to withdraw Mr. Braxton's guilty plea had any better chance of success if the

motion had been filed prior to sentencing as he allegedly requested.  Therefore,

because the motion that plea counsel allegedly failed to file subsequently was filed and

argued by new counsel, Mr. Braxton cannot demonstrate any prejudice resulting from

plea counsel's failure to file that motion.

For all of these reasons, the Court finds that Mr. Braxton is not entitled to relief

on claim 2(a).  Accordingly, it is

ORDERED that the amended Application for a Writ of Habeas Corpus Pursuant

to 28 U.S.C. § 2254 [Docket No. 5] is denied and this case is dismissed with prejudice.

It is further

ORDERED that there is no basis on which to issue a certificate of appealability

pursuant to 28 U.S.C. § 2253(c).


DATED July 24, 2012.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge